UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHAEL C. LEADBETTER, <br> JOELLEN E. TEUSCH, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | CIVIL NO: 1:06-CV-285-TS |
| CITY OF FORT WAYNE, | ) <br> ) | |
| Defendant. | ) | |

**OPINION & ORDER**

Between the dates of August 18, 2004, and August 3, 2006, The Plaintiffs Michael Leadbetter and Joellen Teusch had a series of encounters with individual employees of the City of Fort Wayne, who allegedly violated the Plaintiffs' constitutional rights. The Plaintiffs filed a Pro Se Complaint against the Defendant City of Fort Wayne on August 15, 2006, which they have since amended three times. The Third Amended Complaint alleges civil rights violations under 42 U.S.C. § 1983. The Defendant responded with a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c). The Plaintiffs' response, ostensibly their own Motion for Judgment on the Pleadings, is, in form and in fact, a response to The Defendant's 12(c) Motion. For the reasons stated herein, the Defendant's Motion for Judgment on the Pleadings is granted.

**PROCEDURAL BACKGROUND**

On August 15, 2006, the Plaintiffs Leadbetter and Teusch filed their Pro Se Complaint. On September 15, 2006, the Amended Pro Se Complaint was substituted under a *sua sponte* court order on the grounds that the original complaint proffered allegations in ten single-spaced pages of ten-point type, and did not clearly state the relief sought. On November 15, 2006, the Defendant City of Fort Wayne filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 8, on grounds that the Amended Pro Se Complaint did not contain a short and plain statement of the claim, and that its averments were not simple, concise, and direct. The Plaintiffs filed their Second Amended Complaint on December 22, 2006. On January 11, 2007, the Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 8, on identical grounds as its first Motion to Dismiss. The Plaintiffs filed their Third Amended Complaint on October 25, 2007. The Third Amended Complaint contains 21 pages and 68 paragraphs of charges against the City of Fort Wayne. The Complaint alleges many constitutional violations, all under the umbrella of 42 U.S.C. § 1983. The relief sought is "roughly [$]233,000," owing to losses to income, properties, health, and student loan costs resulting from the alleged constitutional violations.

On December 5, 2007, the Defendant filed its Answer. On November 20, 2008, after months of various discovery and other motions, the Court granted The Defendant's Motion for Extension of Time to File Dispositive Motion, and set December 4, 2008, as the deadline for dispositive motions for either party to be filed, and afterward granted extensions for both parties. On December 11, 2008, The Defendant filed its Motion for Judgment on the Pleadings arguing that the the Plaintiffs' claims should be dismissed.

On December 17, 2008, the Plaintiffs filed two documents, titled (1) The Plaintiffs' Motion for Judgment on the Pleadings and Conditions, and (2) The Plaintiffs' Brief in Support of Their Dispositive Motion for Judgment on the Pleadings. As explained below, it is the Court's

determination that in form and in fact the motion is a Response to The Defendant's own dispositive motion.[1]

## RULE 12(c) STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because the Defendant's motion challenges the sufficiency of the complaint, the standard governing its motion is the same as that governing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Gutierrez v. Peters*, 111 F.3d 1364, 1368 (7th Cir. 1997).

The Supreme Court has articulated the factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* At 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[1]Therefore, The Defendant's Brief in Opposition to The Plaintiffs' Motion for Judgment on the Pleadings and Conditions is best understood as a Reply to The Plaintiffs' Response.

The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations in the Plaintiff's favor. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). However, the Court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 129 S.Ct. at 1949. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950–51. "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 1950.

The Court will review the *pro se* Plaintiff's Complaint more liberally than it would one that was drafted by a trained attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

## FACTUAL BACKGROUND

For the purpose of adjudicating the Defendants' Motion, the Court accepts as true the following facts provided by the Plaintiff.

On or about August 18, 2004, Michael C. Leadbetter and Joellen E. Teusch were visited at their residence by Fort Wayne Neighborhood Code Enforcement Officer Chuck Chaney. Chaney, threatening "seizures and actions," conducted an inspection of the Plaintiffs' property, placing red tags on abandoned vehicles. (3rd Am. Compl. ¶¶ 7–8). The next day, August 19, another red sticker was placed on the Plaintiffs' front door, which was "obtrusive, damaging, and snide-mocking." (3rd Am. Compl. ¶ 10).

4

Also on August 19, the Plaintiffs received via certified mail a list of nine Neighborhood Code violations ranging from a deteriorated porch ceiling to excessive trash and debris on the property, seven of which are "plainly fraud." (3rd Am. Compl. ¶ 12). The city later followed up with a second inspection and additional correspondence. (3rd Am. Compl. ¶¶ 14–15).

On September 30, 2004, the Plaintiffs received a general bulletin from Fort Wayne Mayor Graham Richard explaining that the walkways in the Plaintiffs' neighborhood would be repaved. The Plaintiffs worried that this plan would interfere with their ability to rectify the code violations on their property. (3rd Am. Compl. ¶ 17).

As the Plaintiffs' December 30 compliance deadline approached, they "called Neighborhood Code Enforcement to inquire about the most rapid route to get the code litigation process off our backs." In response, Chaney attempted to force the Plaintiffs to perform clean up operations at his supervision, at which point the Plaintiffs "might have called the Police Department, half-asleep and said stuff and asked questions about the situation." (3rd Am. Compl. ¶ 21).

The next incident occurred on January 5, 2005, when Fort Wayne Parking Control Officer Tessie Krayer arrived to tow vehicles owned by he Plaintiffs for being illegally parked. (3rd Am. Compl. ¶ 24). When the Plaintiffs attempted to tow their own cars into legal parking places, the police were called. After a disturbance that included Leadbetter faking an illness, Leadbetter was placed in a patrol car as the Plaintiffs' vehicles were towed. (3rd Am. Compl. ¶¶ 25–31).

The following day, a police clerk named Cannine Ridley refused to release the towed vehicles. After an argument with Ridley, Leadbetter applied for a handgun license, which he was denied, despite having no felonies on his criminal record. (3rd Am. Compl. ¶ 33). The Plaintiffs

eventually recovered vehicles after hiring their own towing company and receiving ambiguous directions from the City to the impound lot. (3rd Am. Compl. ¶ 35).

On January 9, the Plaintiffs "began private investigations of the structures of the Police Department . . . and Neighborhood Code Enforcement," and found "the condition of the buildings to be hypocritically maintained in contrast to the false allegations" made against the Plaintiffs. (3rd Am. Compl. ¶ 44).

The result of all of the financial and emotional strain resulting from these incidents was that Joellen Teusch was "forced to embarrassingly apply for emergency financial aid at I.P.F.W. College before ever attending her first class." (3rd Am. Compl. ¶ 45).

On March 3, 2005, Teusch attended a Citizens Appeal Board hearing at Neighborhood Code Enforcement meeting regarding the status of her property. The Citizens Appeal Board officer stated that the property was up to code standards, and that a previous ticket Teusch had received would be voided. However, Teusch was not given any opportunity to address the appeals board. (3rd Am. Compl. ¶ 59).

On November 29, 2005, Leadbetter was pulled over for a burned out taillight while driving Teusch's van. The officers allegedly questioned Leadbetter about "drugs, guns, and where Mike was going and what Mike was doing." The ticket was used to "harm Mike's driving privileges by entrapment apparently, via the ex post facto Indiana State financial insurance law." (3rd Am. Compl. ¶ 60).

On June 29, 2006, a Ms. Coe from the Department of Animal Care and Control issued the Plaintiffs two tickets for failure to register and vaccinate their dog. The Plaintiffs were forced to pay a one hundred dollar fine to "prevent the dog from being testicularly altered for calmness." (3rd Am. Compl. ¶ 65).

## DISCUSSION

### A. Pleadings

Before addressing the merits of the Defendant's Motion for Judgment on the Pleadings, it is necessary to resolve the formal issue created by the Plaintiffs' untraditional Response. As stated above, it is this Court's determination to deem the Plaintiffs' so called Motion for Judgment on the Pleadings and Conditions a Response to the Defendant's Motion for Judgment on the Pleadings. The Court reaches this determination for two reasons.

First, it is the logical way to understand the timeline of the filings. On November 20, 2008, the Court set a deadline for the filing of dispositive motions. On December 11, 2008, the Defendant filed its Motion for Judgment on the Pleadings. Six days later, on December 17, 2008, the Plaintiffs filed their own Motion, which frequently refers to language in the Defendant's Motion. Furthermore, the Plaintiffs have not otherwise responded to the Defendant's Motion.

Second, the contents of the Plaintiffs' Motion can only be read as a response, rather than as an independent motion. Nowhere does the Plaintiffs' Motion state a Rule 12(c) or Rule 56 standard, or otherwise provide an explanation of why they are entitled to judgment on the pleadings. Rather, the Motion attempts to refute the Defendant's contention that 42 U.S.C. § 1983 does not provide a basis for relief. The Motion's nature is best evidenced by paragraph five which argues that, "plaintiffs have . . . all . . . essential elements of a Section 1983 claim . . . and . . . the third amended complaint states many, many claims upon which relief may be granted . . . ."

In any event, the distinction is largely academic—regardless of whether the motions are treated independently or consolidated, the issue raised by each Motion is identical: Whether 42

U.S.C. § 1983 can be read to impute the alleged actions of its employees to the City of Fort Wayne in this case.

### B. The Plaintiffs' Claim under 42 U.S.C. § 1983

The Plaintiffs' Third Amended Complaint contends that employees of the City of Fort Wayne deprived them of constitutional rights when, among other things, city employees conducted unconstitutional searches of their property, unlawfully cited them for violations of local ordinances, illegally ticketed and towed their vehicles, attempted to force them to neuter their dog, and improperly arrested or detained them. For these allegedly unlawful activities, the Plaintiffs have sued only the City of Fort Wayne, as opposed to the employees themselves.

A municipality violates the Constitution only when it has an unconstitutional custom or policy. Although a local municipality is subject to suit under 42 U.S.C. § 1983, *respondeat superior* will not suffice to impose § 1983 liability on the municipality. *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995) (*citing Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658, 690–91 (1978)). Rather, a municipal policy or custom must be the basis of the constitutional violation for municipal liability to attach. *Id.* "Misbehaving employees are responsible for their own conduct, 'units of local government are responsible only for their policies rather than misconduct by their workers.'" *Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007)).

Section 1983 jurisprudence provides three ways in which a municipality's policy or custom can give rise to a §1983 claim. First, a claim may arise if a plaintiff demonstrates an express municipal policy that, when enforced, causes a constitutional deprivation. *McTigue,* 60 F.3d 381 at 382. Second, a claim may arise if a plaintiff demonstrates a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law. *Id.* Third, a cognizable claim may arise if a plaintiff alleges that the constitutional injury was caused by a person with final policymaking authority. *Id.*

Assuming that every allegation made in the Plaintiffs' Third Amended Complaint is true, the Plaintiffs still do not allege any actions that would give rise to a §1983 cause of action under *McTigue*. Read in a light most favorable to the Plaintiffs, the Complaint merely alleges a series of individual wrongs committed by individual actors. Despite the Response's protestation that the "complaint contains allegations that the constitutional deprivations suffered by the plaintiffs were occasioned by municipal custom or policy," no facts are alleged that, if true, would support this allegation.

Using the *McTigue* factors, it is first seen that the Plaintiffs do not allege the existence of any express municipal policy that caused their constitutional deprivation. In fact, their Complaint repeatedly refers to certain individual employees who displayed personal malice against them. Second, the Plaintiffs do not allege a widespread practice that is so well-settled as to have the force of law. Again, all of the Plaintiffs allegations refer only to the way in which *they* were treated by the employees of the City of Fort Wayne on discrete, without any reference to whether the City's practice was so widespread as to constitute a custom or usage. Finally, the Plaintiffs do not allege that their injury was caused by a person with final decisionmaking authority. The Complaint refers to every alleged wrongdoer as a mere employee of some governmental agency or another. Aside from a reference to a form letter received from Fort Wayne's Mayor Graham Richard, the Complaint does not make mention of any official with decisionmaking authority. Though it is noted that The Plaintiffs' response references "a single honcho police officer as a judge in powers," it is equally noted that the police officer is not identified, nor are his supposed powers.

Therefore it is the Court's finding that the complaint does not allege a direct causal link between a policy or custom of the City of Fort Wayne and the alleged constitutional violations.

The Plaintiffs's factual allegations are not enough to raise a right to relief above the speculative level, even on the assumption that all the allegations in the complaint are true. Thus, the Plaintiffs fail to allege any actions on the part of The Defendant City of Fort Wayne that would give rise to liability under §1983.

## CONCLUSION

For the reasons stated, the Court GRANTS the Defendant's Motion for Judgment on the Pleadings [DE 132], and the Clerk is directed to enter judgment in favor of the Defendant accordingly. To the extent necessary, and for the reasons stated, the Court DENIES the Plaintiffs' Motion for Judgment on the Pleadings [DE 134].

SO ORDERED on September 1, 2009.

   S/ Theresa L. Springmann

THERESA L. SPRINGMANN

UNITED STATES DISTRICT COURT